J-E02003-19

2020 PA Super 86

| SBA TOWERS II LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WIRELESS HOLDINGS, LLC AND JEFF MACALARNEY | |
| Appellee | No. 325 WDA 2018 |

Appeal from the Order Entered February 8, 2018
In the Court of Common Pleas of Blair County
Civil Division at No: 216 GN 01215

BEFORE:  BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J.,
DUBOW, J., KUNSELMAN, J., NICHOLS, J., and MURRAY, J.

CONCURRING AND DISSENTING OPINION BY STABILE, J.:

FILED: April 6, 2020

A party seeking a permanent injunction must establish its clear right to relief.  **Buffalo Twp. v. Jones,** 813 A.2d 659, 663 (Pa. 2002).  We review to determine whether the trial court committed an error of law.  **Id.**  I would affirm the trial court because I discern no error of law in its finding that Appellant, SBA Towers II LLC, failed to establish a clear right to permanent injunctive relief on any of the bases at issue in this appeal.[1]

---

[1]  I agree that our jurisdiction is proper under Pa.R.A.P. 311(4)(ii), as interpreted in **Thomas A. Robinson Family Ltd. P'ship v. Bioni**, 178 A.3d 839 (Pa. Super. 2017), **appeal denied**, 194 A.3d 560 (Pa. 2018).  There, this

As the Majority notes, the parties Land Lease grants "Lessee the right of access to and from the Leased Space […] on a 24 hours per day/7 days per week basis […]." Land Lease, 12/18/09, at ¶ 18. Appellant is the Lessee. *Id.* at 1, opening paragraph. Appellant has the right to sublease its leased space (*Id.* at ¶ 8), and Appellant has referred to Verizon as a "subtenant" (Motion for Temporary Injunction, 4/14/16, at ¶ 6). Appellee does not dispute Verizon's right of access under the Land Lease. The Land Lease does not expressly grant access to Appellant's contractors, subcontractors, or other third parties.

The record indicates that Appellee always secured the leased space. From the inception of the Land Lease, Appellant had 24/7 access via a lockbox. Appellee apparently did not monitor who gained access via that lockbox, be it Appellant's personnel or a contractor that Appellant hired to perform a service. Subsequently, Appellee implemented new security measures that gave rise to this lawsuit. Appellee required that personnel from Appellant and Verizon check in at Appellee's main office during regular business hours. After hours,

_____

Court reasoned that Rule 311(4)(ii) applied because the "terms of the permanent injunction are different from those under the trial court's preliminary injunction, in that it enjoins [conduct not prohibited under the preliminary injunction.]" *Id.* at 847. Under *Bioni*, therefore, where the trial court has entered preliminary and permanent injunctions, the injunctions are the points of reference for applying Rule 311(4)(ii). Here, the interlocutory appeal is permissible under Rule 311(4)(ii) and *Bioni* because the trial court's permanent injunction permitted conduct that the preliminary injunction prohibited.

- 2 -

Appellee required Appellant and Verizon to call Appellee for access. Appellee had personnel on call 24/7 to grant access at any time. Persons not employed by Appellant or Verizon who wished to gain access unaccompanied by personnel from Appellant or Verizon were required to undergo a criminal background check and then present identification to gain entry. To prevail in this case, Appellant needed to show a clear right, under the Land Lease, to be free of these restrictions.

> In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties. If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties. If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper. A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

***Commonwealth by Shapiro v. UPMC***, 208 A.3d 898, 909–10 (Pa. 2019) (internal citations and quotation marks omitted)

I agree with the trial court that Paragraph 18 of the Land Lease is ambiguous because it is unclear whether Appellant's access was to be completely unfettered or subject to reasonable restrictions. I also agree with the court's conclusion that the hold harmless clause supports the need for some measure of security so that Appellee could not be considered negligent for allowing somebody to access to the facility and damage Appellant's equipment. Land Lease, 12/21/09, at ¶ 15. No part of the Lease, including

the hold harmless clause, answers the precise question before us: how much security was permissible under the Land Lease?

In my view, the Land Lease does not forbid any security measure Appellee wishes to employ, so long as Appellant retains the promised 24/7 access. Thus, I would look to the extrinsic evidence to determine whether Appellant still has 24/7 access. As noted, during business hours, credentialed personnel of Appellant and Verizon can gain access by simply checking in at Appellee's main desk. That is not a denial of access. After hours, Appellee has personnel on call at all times to grant access to credentialed personnel of Appellant and Verizon. Jeff MacAlarney of Appellee testified that Appellee's personnel could arrive on site prior to Appellant's or Verizon's in the event of an after-hours call. N.T. 5/8/17, at 65. There is no evidence that any of Appellant's or Verizon's personnel were ever delayed in gaining access to Appellee's facility upon requesting after-hours access. Further, Appellant does not argue that a short wait, even if it occurred, would support injunctive relief.

The most onerous restrictions apply to persons who do not have a credential from Appellant or Verizon and who wish to gain access to Appellee's facility unaccompanied by a credentialed employee of Appellant or Verizon. Appellee requires a criminal background check for these people, and then they must provide suitable identification prior to gaining entry. Appellant argues, and the Majority concludes, that Appellee has no right under the Land Lease to impose these requirements. My view, on the contrary, is that Appellant has

failed to establish that unidentified third parties have a right of access under the Land Lease. As I explained above, Paragraph 18 of the Land Lease grants "Lessee" 24/7 access, and the opening paragraph defines Lessee only as Appellant. Appellant describes Verizon as a subtenant, and Appellee does not dispute Verizon's right of access under the Land Lease. But Appellant fails to explain how paragraph 18 of the Land Lease requires Appellee to grant unfettered access to anyone—unidentified and unaccompanied by personnel from Verizon or Appellant—who claims to be on site to perform a service for Appellant and/or Verizon. This would be an extraordinarily broad construction of the right of access under paragraph 18, and I find no support for it in the plain language of that paragraph or anywhere else in Land Lease. Jason DellaValle of Appellant admitted that it is not unreasonable for a company to want to know who is in its building. N.T. 5/8/17, at 39. MacAlarney testified that Appellee denied access only to people who lacked a right of access under the Land Lease, i.e., those who failed to produce a credential from Appellant or Verizon. *Id.* at 64, 75-79. I would conclude that the Land Lease is unambiguous in granting access to Appellant, its sub-lessees, and no other entity or individual. Nothing in the Land Lease required Appellee to grant unfettered 24/7 access to unidentified third parties unaccompanied by credentialed personnel from Appellant and/or Verizon.

For all of the foregoing reasons, I believe Appellant has failed to establish a clear right to injunctive relief on any ground at issue in this appeal.

I therefore join the Majority insofar as it affirms the trial court's order and respectfully dissent insofar as it reverses.

Judge Shogan joins the concurring and dissenting opinion.